All right. Our third case this morning is 23-1343 Rowland v. Matevousian. And Mr. Lippe, you may proceed when you're ready. Thank you, Your Honor. May it please the court, I'm Emil Lippe on behalf of the appellant Dustin Rowland. Mr. Rowland, while a pretrial detainee was injured in 2019, he was diagnosed with an umbilical hernia and surgery recommended in November of 19. His sentencing was delayed by agreement to allow for the surgery, which did not occur. And at his sentencing in June of 2020, the chief judge of the Northern District of Texas ordered that his medical needs be given immediate attention. He was transferred multiple times thereafter. We filed this action. He didn't get his hernia surgery until 2022 after the district court ordered that a status report be filed detailing the reasons why he had not gotten his surgery. The surgery happened shortly thereafter. Overall, I think one of the key things is the procedural status that resulted in the two basic orders that are at issue. These were a 12B6 motion on the Bivens claim and a motion for summary judgment on exhaustion of administrative remedies. This court is fully aware, of course, of how the presumptions and inferences are to be drawn on a 12B6 motion. As far as the summary was allowed. As far as Bivens is concerned, of course, the court is aware that the Supreme Court has made it clear that extensions are to be disfavored. And in Ziegler, the Supreme Court stated that new Bivens claims should not be allowed if there was a new context of the claims and there was a meaningful difference. First of all, Carlson v. Green remains good law and that is one of the Bivens line of cases that the Supreme Court has recognized continues to exist. In Carlson, the Supreme Court held that denial of needed medical care to inmates was a violation of the Eighth Amendment. The only real distinction that the district court could draw between Carlson and this case was that in Carlson the inmate died. Here, of course, Mr. Rowland survived, but experienced heart failure. He didn't get immediate care. He got care three years later. Two years after the sentencing judge said, give him his care. Wasn't he getting medication? There was medication. There was attention. He was seen by doctors. This court has made it clear. I think McAllen v. Morales, 945 F. 3rd 1276, has observed that a delay in care, and in that case it was a two-hour delay while the inmate is experiencing excruciating pain, can amount to a constitutional violation. Of course, the court's aware the Eighth Amendment doesn't prohibit cruel and unusual punishment that results in death. It prohibits cruel and unusual punishment. And the case law is abundantly clear that unnecessary infliction of pain and suffering is a violation. Why would disagreement about a treatment plan, though, be cruel and unusual punishment? He was continuing to experience pain. He was complaining about it. They gave him medication and it was inadequate. Sounds like a malpractice claim. Well, it depends upon, again, I think that's a matter of how you interpret the allegations in a 12b6 context. The allegation was that he needed the care, that he needed the surgery, that he kept requesting the surgery, and that the treatment that they provided was inadequate. We've cited multiple cases in our brief, of course, where there was some treatment given, but it was inadequate. The constitutional right at issue was clearly established. There's no question about that. The rank of the officers is basically the same as it was in Carlson v. Green. Since Green, the Supreme Court's made it clear that there can also be special factors that militate against a Bivens claim. I think the district court found there were special factors that made the Bivens remedy inapplicable here. What was the court's mistake in that analysis? I think the court was mainly looking at the fact that there was the Tort Claims Act that Congress had passed. However, in Carlson v. Green, the Supreme Court said that doesn't preclude Bivens liability. There's also the Prison Litigation Reform Act, which was passed after Carlson v. Green. However, the PLRA doesn't deal with the liability. This court held in Howard v. Wade, 534 F. 3, 1227, that the PLRA sets forth administrative requirements that are to be followed, but, and I quote, it does not, however, change the constitutional mandates of the Eighth Amendment, and that the limitations of the grievance procedures cannot override constitutional duties. That was this court's holding in 2007 in the Howard case. Therefore, there's no meaningful difference between this case and Carlson v. Green. The constitutional liability was clear. The inadequacy of the treatment was properly alleged, and there are no other special factors that warrant the denial of the claim. What about the fact that the BOP had this administrative remedy process? Did that distinguish it from Carlson? I don't see how it does because this court has held that that doesn't deal with the constitutional obligations. It sets forth administrative requirements, yes, and those are very clearly set forth, but then in terms of the individual liability, if you go into the Tort Claims Act, you've got the exceptions to the exception for arresting officers, for example, but essentially it does not address liability where there is a violation of constitutional rights. What happened on the administrative claim? This is particularly outrageous. First of all, keep in mind this is a prisoner who doesn't have his office. He doesn't have a filing cabinet. He doesn't have a copy machine. Obviously, his filing is difficult. He has stated in his declaration that I tried multiple times to get the proper forms. I tried to get these filed, and there was no cooperation from the prison officials. This is in a summary judgment context, and that testimony was essentially ignored by the court, but the crowning blow was when he made his final appeal under the administrative process. His appeal was sent back, dated November 15, 2021, a rejection notice. It's in the record saying you failed to attach the following. You've got 15 days to correct it. The very document has a date stamp showing it was received in the warden's office on November 30, 15 days later. There's a notation on that form that the prisoner received it on December 9. He had 15 days, and the time expired almost 30 days before he got the document. Couldn't he have raised an issue with respect to that? Possibly raised an issue, but it's like filing something after the fact, and to say that the PLRA requires you to file something that you've been told is already late is absurd, respectfully, Your Honor. To file something after your deadline has passed, and the fact that you didn't file it after the deadline was passed doesn't mean you're ignoring the rules. It means you're saying, well, I guess I'm out of luck, and it wasn't his fault, and this court has held, again, Howard v. Wade, that you look at Little v. Jones at 607 F. 3rd, 1245, where prison officials prevent, thwart, or hinder a prisoner's efforts to avail themselves an administrative remedy. They render that remedy unavailable, and the court will excuse the failure to follow that. The court held, also, in Howard v. Wade, following a Fifth Circuit case, Johnson v. Johnson, that you don't need to keep complaining about the same problem. He filed numerous complaints. The sentencing court was... Are they all in the record? Yes, they are in the record, and in terms of pursuing the final step to the central office, that's where this document, where he got it 24 days after the deadline had passed, to file his supplement, and yes, it's true. He didn't take that fruitless, unnecessary, forbidden step. Basically, the situation is that the appellant suffered considerable pain, excruciating pain. He repeatedly complained about it. This was something that the officials were fully aware of. They kept delaying things. They have internal administrative manuals that they cited to the district court, which we complained about, and we asked for discovery because we wanted the entire jail file. We were not given that opportunity, and therefore, all that we're left with is the simple fact that he attempted to evade himself of the remedies and was not given a proper response. With the court's permission, we reserve the remainder of our time. Thank you. Good morning, Your Honors. Janie Lilly, representing the athletes. Your Honor, plaintiff's claim would hold three individual Bureau of Prisons employees liable for damages for systemic decisions made by a number of administrators, both within the prison and outside the prison, in making a conservative course of treatment that ultimately resulted in surgery that plaintiff requested. In any event, the individual defendants would be entitled to qualified immunity, and finally, plaintiff has not exhausted his claims under the Prison Litigation Reform Act or the Federal Tort Claims Act. If I may talk about the Bivens claims and specifically the new context analysis. This claim, which challenges and implicates systemic decisions made by the Bureau of Prisons in how to treat and manage a condition like plaintiff's, is vastly different from the context presented in Carlson v. Green, which targeted individual acts of malfeasance. Here, the allegations are, of course, that these three individual administrators followed medical guidance, pursued a conservative course of treatment for the umbilical hernia, and ultimately, when deemed appropriate under Bureau of Prisons protocols and after decisions by the Prisons Utilization Review Committee, referred him for outside consultation and ultimately surgery. Those present vastly different contexts from Carlson v. Green. In particular, the nature of the judicial intrusion that would be involved in judicial superintending of these types of medical management decisions by the Bureau of Prisons that are wildly different from Carlson v. Green. The nature of the judicial guidance and the specificity of judicial guidance, again, another factor in the new context analysis that the Supreme Court has said a court must undertake before expanding Bivens liability, is vastly different here. As Your Honor has pointed out, and under this Court's precedence, the availability of the administrative remedy program, which plaintiff used in this case successfully, is a special factor that would preclude expansion of this type of liability. How do you respond to his claim that he made numerous requests for help and didn't get it for a long period of time? Your Honor, I have two responses. First, with respect to the new context analysis for expansion of Bivens liability, the question the Supreme Court has asked this Court to look at is whether the administrative remedy program was an available alternative remedy that would prevent courts from intruding into this domain. And this Court has answered very clearly in Silva that that's the type of special factor that would prohibit expansion of liability. With respect to his claims on exhaustion, I think as we've explained in our brief, plaintiff did not exhaust at that final stage his claims, his requests for surgery. He never exhausted claims for post-surgical care or some of the other conditions he mentioned. His claim was for surgery, and he failed to exhaust at that final stage. As the district court held, while he complained that he did not have access to the proper forms, that is belied in the record by his earlier appeals in which he submitted administrative requests on the proper forms. What about the confusion resulting from the way they handled the administrative complaint? Your Honor, I think the confusion that plaintiff was pointing to was that raised in his 60B motion. Initially, he presented an argument to the district courts that he could not have complied with the 15-day deadline because he didn't have the warden's written response, and the district court properly denied that because he could have tried to cure by providing his own complaint that was an additional deficiency. Is there any policy that covers that? Yes, Your Honor. The Bureau of Prisons Administrative Remedy Program provides for a prisoner who can't comply with a deadline through no fault of his own, provides for extensions of those deadlines. So the Bureau of Prisons can extend deadlines where the prisoner has made a showing that he couldn't comply through no fault of his own. He often, he or she often would recruit or seek to verify that it wasn't his fault with a BOP staff member. But what can't be the case is that the failure to comply at all somehow satisfies exhaustion, and this court has made that clear. You're talking about failure to do anything after the 15-day... Yes, Your Honor. ...confusing dates that ended up on what he got. Is there any explanation as to why it took so long? No, Your Honor. At this stage in the case development, there's no explanation precisely because he didn't attempt to comply with the deadline and explain what might have gone wrong. If he had explained at the time he received the deficiency notice, I don't have the prison warden's response, and I need additional time to get that. I can't comply with that portion of the deficiency notice, but here's my complaint. Then we might have a record that's precisely... So I'm talking about his failure to exhaust his administrative remedies after he gets this confusing piece of paper with, you know, the 15-day thing and the time has already expired. Right. And so as is contemplated by the administrative remedy program statement, if he were to get a deadline to which he could not comply, he could explain that in trying to correct the deficiency notice. The administrative remedy program and the Prison Litigation Reform doesn't contemplate that a prisoner just give up and make no effort to perfect the process. And indeed, this court has held so in similar circumstances, that if he had made some sort of effort to show an attempt to compliance, an extension of the deadline, and a request for an additional 15 days, then he would have perfected his claim. Could we assume, though, that that would have been futile? No, Your Honor, precisely for the reasons discussed in the policy, that if a prisoner can't comply with a deadline, for instance, he was ill, incapacitated, or in transit somewhere, that he can request an extension of that deadline and explain why he couldn't comply with it. And that's very similar to the circumstances here. In any event, his claims were moot. His claim for surgery at this point, which was the only claim presented in the administrative process, is moot because, of course, now he has received the surgery. Finally, plaintiff makes no attempt to resuscitate his Federal Tort Claim Act claim. He did not properly exhaust that claim, and therefore, the district court properly dismissed the claim. The court has no further questions, and we ask the court to affirm the judgment of the district court. Thank you, counsel. Mr. Lipp, you have some rebuttal time still. I please the court. You just heard about, well, gee, there's all this stuff in the administrative manual. No showing that that manual was ever made available to Mr. Rowland. No showing that he was ever told that he could request extensions. The actual document that he had didn't tell him about that. Hadn't he made previous complaints, and hadn't he been through the process several times before? There had been times when he had not completed the full level of appeals. That's true. Well, he had filed grievances, he had filed complaints, and he had gone to the warden. He had not taken that last step. That doesn't indicate that he knew about the administrative procedures. The district court, I think there's been a misrepresentation of what the district court ruled. At footnote 11 on page 21 of the district court ruling, it says the BOP administrative remedy program provides an avenue to request and obtain copies of responses by remedy ID number. It doesn't quote any section of the administrative manual where he could have requested an extension of time. And, you know, this was a summary judgment issue. This was an issue where there should have been an opportunity to flesh out the discovery, to flesh out what he knew, what happened, to look at the complete file. What we were given in the trial court was their submission of what they said was from the record. We made a proper request to have permission for discovery, which the trial court ignored, and proceeded to summary judgment. In Aguilar, Aviada v. Terrell, from this court in 478 F. 3rd 1223, a distinction was drawn between determining a failure to exhaust administrative remedies on a 12B6 motion and doing that under summary judgment. And it was said that only rarely should you make that ruling based upon the allegations of the plaintiff. So what did we have? We had the plaintiff's allegations, and we had their evidence, and we had no opportunity to conduct discovery into the full extent of the jail file. There's no indication that he was given a disclosure of all these illusory possible remedies to request an extension of time. The face of the document that they rely upon shows that he didn't have a sufficient time because the time expired, and the time expired through no fault of his own. The court erred in granting both the dismiss and the summary judgment. The intrusion by the judicial process, I think, was dealt with and discussed in this McCowan decision, where there was just a two-hour delay. Here, there was a three-hour delay. Thank you, Counselor. Your time has expired. We appreciate it. Counselor excused, and the case is submitted.